COURT OF APPEALS













COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

ENRIQUE CAMACHO,                                      )

                                                                              )              
No.  08-05-00089-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )          
34th Impact District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20040D00994)

                                                                              )

 

 

O
P I N I O N

 

Enrique Camacho
appeals his conviction for possession with intent to deliver cocaine in the
amount of four grams or more, but less than two hundred grams.  A jury found Appellant guilty and the trial
court assessed punishment at 5 years imprisonment.  In his sole issue, Appellant contends the
trial court erred in refusing to suppress his oral statements and erred in
refusing to suppress the evidence derived from these statements, specifically
the cocaine seized from his person and his subsequent written statement.  We affirm.








On January 28,
2004, Officers Raul Jacquez and Claude Collins, assisting in a narcotics
investigation, conducted a traffic stop of a gray 1998 GMC Yukon after
observing the driver fail to signal a lane change about four times.  Officer Collins approached the driver, later
identified as Appellant, and Officer Jacquez approached the front passenger,
Gesenia Gomez.  When the officers were
unable to obtain positive identification from either occupant or proof of
insurance on the vehicle, the officers then switched roles and re-approached
the vehicle.  Officer Jacquez asked
Appellant to step out of the vehicle. 
Appellant was frisked, but not searched. 
Officer Jacquez also asked Appellant if he had any weapons or narcotics
in the vehicle and Appellant said Ano.@

Officer Jacquez
asked Appellant who was the owner of the vehicle and Appellant told him that
Ms. Gomez was the owner.  Officer Jacquez
instructed Officer Collins to stand by Appellant, while he spoke to Ms.
Gomez.  Ms. Gomez gave the officer both
verbal and written consent to search her vehicle.   Ms. Gomez=s
children, two little girls, were also in the vehicle, so Officer Jacquez
directed everyone to exit the vehicle and he placed Ms. Gomez and the girls in
the back of the patrol unit.  Officer
Jacquez did recall that before he asked them to exit the vehicle, he observed
that the girls were crying and Ms. Gomez explained that they were crying because
they were very hungry.  Officer Jacquez
denied that there was any conversation with Ms. Gomez about the government
taking her children away in obtaining her consent to the search.

About that time, a
K-9 narcotics unit arrived.  No one was
in the vehicle when it was searched.  The
dog handler quickly notified Officer Jacquez that the dog had detected an
illegal substance.  Officer Jacquez went
back to the SUV and saw apparent narcotics, possibly cocaine, in a zip-lock bag
in a compartment on the driver=s
side door.  Officer Jacquez also observed
a golf ball size bag of narcotics in the center armrest.








After the
narcotics were discovered, Officer Jacquez returned to Appellant and asked him
if he had any other narcotics on his person.[1]  Appellant stated, AYes,
I do@ and said
he had it in his underwear.  According to
Officer Jacquez, by that point in time, Appellant was under arrest for the
narcotics found in the SUV, but was not yet handcuffed.  Officer Jacquez testified that he did not
personally give Appellant his Miranda warnings.[2]  Rather, Detective Boyce Hooper read Appellant
his Miranda rights after he arrived and had been advised by Officer
Jacquez and Officer Fairbanks, the dog handler, that narcotics had been found
in the SUV and that Appellant had some narcotics in his undergarments.

Detective Hooper
testified that he observed two baggies of what he believed to be cocaine inside
the SUV.  Detective Hooper then made
contact with Appellant.  He read
Appellant his Miranda rights and then asked Appellant if he had any
other cocaine on him and Appellant said he did and explained that it was
concealed in his undergarments. 
Detective Hooper and another officer searched Appellant and found a
clear plastic baggy of a white powder believed to be cocaine inside Appellant=s undergarments.  Detective Hooper agreed that once the cocaine
was discovered in the SUV, Appellant was technically under arrest.








Appellant gave a
written statement to Sergeant Carrillo at the police station.  Sergeant Carrillo testified that he presented
Appellant with a card advising him of his Miranda rights.  Appellant read the card and it was also read
to him by Sergeant Carrillo.  Appellant
signed and initialed the card, indicating that he understood his rights.  Appellant was allowed to read the completed
statement and to make any additions, alterations, changes, or deletions.  Appellant chose to make an addition to his
statement.  Appellant signed the
confession in the presence of Sergeant Carrillo, Detective Hooper, and another
officer.  Sergeant Carrillo denied ever
having any conversation with Appellant about whether Ms. Gomez would be
arrested or not or whether Ms. Gomez=
children would be left alone or would be taken away from her by Child
Protective Services.  Detective Hooper
also testified that no deal was made in exchange for Appellant=s statement and that no promises were
made to him.








Appellant
testified at the suppression hearing. 
According to Appellant, during the traffic stop, he and Ms. Gomez were
pulled out of the SUV after he failed to produce a driver=s license.  Ms. Gomez was immediately placed in the squad
car and the children were left in the SUV. 
An officer patted down Appellant. 
Appellant was then pulled to the side and the officer patted him down
again before placing him in handcuffs. 
The officer found nothing on him in each pat down.  The officers then sat Appellant down on the
parking curb in the parking lot, away from the vehicles.  Later, detectives approached him and put him
up against the wall.  A detective asked
him if he knew what was going on.  Appellant
was then left there with another officer while they searched the SUV.  The officers then returned and asked
Appellant to cooperate if he did not want his girlfriend to go to jail or CPS
to take her children away.  Appellant
told the officers that he would cooperate with them.  They then asked him, AOkay.  Where is it?@  Appellant told them that he had it on
him.  A detective asked Appellant if he
had been patted down and Appellant explained that he was patted down twice, but
they had not found anything.  The
detective then asked Appellant, AOkay.  So, where is it?@  Appellant told the detective that he Ahad it in [his] privates.@ 
According to Appellant, all of the narcotics were on him, and there was
absolutely nothing in the SUV.  Appellant
testified that he was given the Miranda warnings after he had told the
officers where the drugs were located.

Gesenia Gomez
Camacho testified she was pulled out of the SUV after she failed to produce a
driver=s
license.  She was put into the back of the
patrol car while here daughters remained in her SUV.  The girls started crying.  Appellant had already been pulled out of the
car, handcuffed, and put to the side. 
Ms. Gomez observed the officers pat Appellant down and handcuff him
right away.  Ms. Gomez observed Appellant
move a little closer to the SUV where the girls could see him in the side
window.  She did not hear any
conversations between Appellant and the police officers.  Officer Jacquez asked her to sign a consent
form to search her SUV.  At first, she
did not want to give consent, but was threatened with arrest and having her
children removed by CPS.  According to
Ms. Gomez, the officers searched her SUV and found nothing.








At the suppression
hearing, Appellant=s counsel
argued that all of Appellant=s
oral and written statements and the cocaine found on his person were
inadmissible because his initial oral statement was the result of a custodial
interrogation without the benefit of the Miranda warnings.  The trial court denied the motion to
suppress.  At trial, Appellant=s counsel re-urged his objections,
cross-examined the officers extensively on the suppression issues, and
throughout the trial raised the same objections to the officers= testimony and the admissibility of the
State=s
evidence.  In addition, Appellant=s counsel raised the objection that all
the evidence Appellant sought to suppress was inadmissible under the Fifth
Amendment.  The trial court found that
Appellant=s
objection on federal grounds was timely, but overruled this objection as well.

In his sole issue,
Appellant argues that the trial court erred in refusing to suppress his oral
statements to Officer Jacquez because the statements were made without first
administering the Miranda warnings and were the product of coercive
interrogation procedures and illegal inducements and promises.  Further, Appellant contends that the trial
court erred in refusing to suppress the evidence derived from these statements,
specifically, the cocaine seized from his person and his subsequent written
statement to the police, pursuant to exclusionary rule in the Fifth Amendment.

Standard
of Review








We review the
trial court=s ruling
on a motion to suppress for an abuse of discretion.  Guzman v. State, 955 S.W.2d 85, 88-9
(Tex.Crim.App. 1997).  Under this
standard, we give almost total deference to the trial court=s determination of historical facts
supported by the record, especially when the findings are based on an
evaluation of credibility and demeanor.  Id. at 89.  We review de novo mixed questions of
law and fact that do not turn on an evaluation of credibility and
demeanor.  Id.; Balentine v. State, 71
S.W.3d 763, 768 (Tex.Crim.App. 2002). 
When the trial court does not make explicit findings of fact, we review
the evidence in a light most favorable to the trial court=s ruling.  Carmouche v. State, 10 S.W.3d 323,
327-28 (Tex.Crim.App. 2000).  In
determining whether a trial court=s
ruling on a motion to suppress is supported by the record, an appellant court
generally considers only the evidence adduced at the suppression hearing.  See Rachal v. State, 917 S.W.2d 799,
809 (Tex.Crim.App. 1996), cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136
L.Ed.2d 539 (1996).  However, where the
suppression issue is consensually re-litigated by the parties at trial, as in
this case, we consider the evidence presented at the hearing as well as the
relevant evidence presented at trial.  Rachal,
917 S.W.2d at 809.  The trial court=s ruling will be upheld if it is
reasonably supported by the record and is correct on any theory of law
applicable to the case.  State v. Ross,
32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

Under Miranda,
the prosecution may not use statements, exculpatory or inculpatory, stemming
from custodial interrogation of the defendant unless it demonstrates the use of
procedural safeguards effective to secure the privilege against
self-incrimination.  Morris v. State,
897 S.W.2d 528, 531 (Tex.App.--El Paso 1995, no pet.), citing Miranda v. Arizona, 384 U.S.
436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).  Custodial interrogation is questioning
initiated by law enforcement officers after a person has been taken into custody
or otherwise deprived of his freedom of action in any significant way.  Miranda, 384 U.S. at 444, 86
S.Ct. at 1612.








In this case, the
State does not dispute that Appellant was in custody at the time he made his
oral statement to Officer Jacquez; rather, it contends that the statement did
not stem from an interrogation.  The term
Ainterrogation@
under Miranda Arefers
not only to express questioning, but also to any words or actions on the part
of the police (other than those normally attendant to arrest and custody) that
the police should know are reasonably likely to elicit an incriminating
response from the suspect.@  Rhode Island
v. Innis, 446 U.S.
291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980).  The term Aincriminating
response@ refers
to any response that the prosecution may seek to introduce at trial.  Id.
at 301 n.5, 100 S.Ct. at 1690 n.5. 
According to Officer Jacquez, before conducting such a search incident
to an arrest, he asked Appellant if he had any type of weapons, needles, or
narcotics on his person.  In response,
Appellant told the officer that he had cocaine in his undergarments.  Officer Jacquez explained that every time he
arrests someone, for his safety, he searches the person before that person is
handcuffed and placed in the patrol unit because that person could have a
weapon or a needle that could poke him. 
Officer Jacquez denied that he interrogated Appellant in order to obtain
an incriminating response.








Not all
post-arrest police questioning constitutes an interrogation.  Jones v. State, 795 S.W.2d 171, 174
(Tex.Crim.App. 1990).  AFor example, routine inquiries,
questions incident to booking, broad general questions such as >what happened=
upon arrival at the scene of a crime, and questions mandated by public safety
concerns, e.g., >where
did you hide the weapon=
when the weapon has just been hidden in the immediate vicinity@ are not interrogation.  See id. at 174 n.3.  Officer Jacquez=s
inquiry, however, does not fall within the sort of questioning that is normally
attendant to arrest and custody.  See
Innis, 446 U.S.
at 300-01, 100 S.Ct. at 1689-90; McCambridge v. State, 712 S.W.2d 499,
505 (Tex.Crim.App. 1986).  While the
police officer was justified in conducting a search incident to arrest,[3]
we can find no justification for directly questioning Appellant about the
presence of narcotics on his person, which under the circumstances, was certain
to elicit an incriminating response.  We
conclude that Officer Jacquez=s
inquiry was not the type of questioning normally attendant to arrest and
custody, but rather constituted an interrogation within the meaning of Miranda,
and therefore, Appellant=s
oral statement should have been suppressed. 
Having reached this conclusion, we next determine whether the cocaine
seized from Appellant=s
person or his subsequent written statement were also inadmissible under the
exclusionary rule in the Fifth Amendment.

The Afruit of the poisonous tree@ doctrine of Wong Sun v. United
States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) does not apply to
mere violations of the prophylactic requirements in Miranda:  while the statement taken in violation of Miranda
must be suppressed, other evidence subsequently obtained as a result of the
statement, i.e., the Afruits@ of the statement, need not be
suppressed.  Baker v. State, 956
S.W.2d 19, 22 (Tex.Crim.App. 1997), citing Michigan
v. Tucker, 417 U.S. 433,
452, 94 S.Ct. 2357, 2368, 41 L.Ed.2d 182 (1974); Oregon v. Elstad, 470 U.S. 298, 314,
105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985). 


Unlike the Fourth
Amendment exclusionary rule, the warnings required by Miranda are
designed to protect against a defendant=s
compelled testimony in violation of the Fifth Amendment.  See United
 States v. Patane, 542 U.S.
630, 636, 124 S.Ct. 2620, 2626, 159 L.Ed.2d 667 (2004); Elstad, 470 U.S. at 306-07,
105 S.Ct. at 1292.  Failure to administer
Miranda warnings creates a presumption of compulsion in the making of a
custodial statement, which implicates the Fifth Amendment=s Self-Incrimination Clause and
requires the suppression of the statement. 
Patane, 542 U.S.
at 639, 124 S.Ct. at 2627; Elstad, 470 U.S. at 307, 105 S.Ct. at
1292.  However, this presumption extends
no further than necessary to protect the privilege against self-incrimination
and does not require suppression of the Afruits@ of a Miranda violation when the
Afruit@
is a subsequent, properly warned and voluntary statement or is physical
evidence obtained as a result of an unwarned, but voluntary statement.  See Patane, 542 U.S. at 642-44, 124 S.Ct. at 2629-30; Elstad,
470 U.S.
at 307-09, 105 S.Ct. at 1292-93. 








Here, Appellant
argues that his oral statement was the product of coercive interrogation
techniques employed by Officer Jacquez, that is, threatening to arrest
Appellant=s
girlfriend and to have her children taken away and placed in child protective
services if Appellant did not cooperate with the narcotics investigation.  Further, Appellant asserts that he was
induced to make the statement only because of Officer Jacquez=s unlawful promise that he would
release Appellant=s
girlfriend and her children and allow them to go home if Appellant cooperated
and told the officer where the cocaine was hidden.








The rule in Wong
Sun requires suppression of the fruits of a defendant=s statement only when the statement was
obtained through actual coercion.  Baker,
956 S.W.2d at 22, citing Tucker, 417 U.S. at 448-49, 94 S.Ct. at
2365-67; Elstad, 470 U.S. at 314, 105 S.Ct. at 1296; see also Patane,
542 U.S. at 644, 124 S.Ct. at 2630 (the court requires the exclusion of the
physical fruit of actually coerced statements); Chavez v. Martinez, 538
U.S. 760, 769, 123 S.Ct. 1994, 2002, 155 L.Ed.2d 984 (2003)(those subjected to
coercive police interrogations have an automatic protection from the use of
their involuntary statements [or evidence derived from their statements] in any
subsequent criminal trial).  A statement
is involuntary if the record reflects Aofficial,
coercive conduct of such a nature that any statement obtained thereby was
unlikely to have been the product of an essentially free and unconstrained
choice by its maker.@  Alvarado v. State, 912 S.W.2d 199, 211
(Tex.Crim.App. 1995); see also Schneckloth v. Bustamonte, 412 U.S. 218, 225,
93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). 
Before a promise will render a confession inadmissible, the promise must
be positive, made or sanctioned by a person in authority, and be of such
character as would be likely to influence the defendant to speak
untruthfully.  Creager v. State,
952 S.W.2d 852, 856 (Tex.Crim.App. 1997). 
The voluntariness of the statement is determined by considering the
totality of the circumstances under which the statement was obtained.  See Creager, 952 S.W.2d at 855.  The ultimate question is whether Appellant=s will was overborne.  See id. at 856.

According to
Appellant=s
testimony, after he was patted down twice, was handcuffed, and the SUV
searched, the police officers came over to him and Athey
asked me that if I didn=t
want my girlfriend or her kids--or the CPS to take the kids away and her go to
jail, for me to cooperate with them.@  Specifically, the following exchange
occurred:

So, he had told me to work with them
and she would get--she=d
be able--they wouldn=t
arrest her and they wouldn=t
take her kids away.  So, I told them that
I=d cooperate with them.  So, they asked me, >Okay.  Where is it?=  And I told them that I had it on me.

 

In contrast, Officer Jacquez
testified at trial that he asked Appellant if he had any type of weapons,
needles, or narcotics on his person. 
Officer Jacquez stated that he did not have Appellant at gunpoint or in
handcuffs and did not threaten him in any way. 
Although Officer Jacquez did not specifically rebut Appellant=s claim that he made promises in
exchange for Appellant=s
oral statement, Appellant=s
testimony indicates only a general, non-specific request for Appellant to
cooperate with the police.  Considering
the totality of the circumstances, the evidence does not suggest that Appellant=s will was overborne or that he was
coerced such that his statement was given involuntarily.








With regard to
Appellant=s
subsequent written statement, the relevant inquiry is whether this later,
properly warned statement was also voluntarily made.  See Jones v. State, 119 S.W.3d 766,
773 (Tex.Crim.App. 2003); see also Elstad, 470 U.S. at 309,
105 S.Ct. at 1293 (Though Miranda requires that the unwarned admission
must be suppressed, the admissibility of any subsequent statement should turn
in these circumstances solely on whether it is knowingly and voluntarily
made.).  AAs
in any such inquiry, the finder of fact must examine the surrounding
circumstances and the entire course of police conduct with respect to the
suspect in evaluating the voluntariness of his statements.@ 
Elstad, 470 U.S.
at 318, 105 S.Ct. at 1298.  

Officer Jacquez
testified that the initial traffic stop occurred at approximately 1:30 p.m.,
and within moments of the encounter, the SUV was searched and Appellant had
make his oral statement.  According to
Detective Hooper, he read Appellant his Miranda rights after being
advised that narcotics had been found in the SUV and that Appellant had
narcotics on his person.  After Appellant
was transported to the police station, he agreed to give a written statement to
Sergeant Carrillo.  The detective
testified that he advised Appellant of his Miranda rights from a printed
card, Appellant read them and they were also read to him by Sergeant
Carrillo.  Appellant initialed each of
his rights, indicating that he acknowledged and understood his rights.  By his signature, Appellant acknowledged that
he freely and voluntarily waived those rights. 
Appellant=s written
statement also states that he knowingly, intelligently, and voluntarily waived
his constitutional rights.  The written
statement indicates that Sergeant Carrillo warned Appellant at 3:45 p.m. and
that the statement was given between 4 to 4:45 p.m.  Both Sergeant Carrillo and Detective Hooper
testified that no threats or promises were made in exchange for Appellant=s written statement.  Further, Appellant=s
written statement recites that he was not threatened or made any promises.  After examining the surrounding circumstances
and the entire course of police conduct, it is clear that Appellant=s subsequent written statement was
voluntarily given.  Therefore, we
conclude that even if the trial court erred in refusing to suppress Appellant=s oral statement to Officer Jacquez,
the alleged Afruits@ of that statement, the cocaine seized
from his person and his subsequent written statement were nevertheless
admissible at trial.








As discussed
above, we have determined that it was error for the trial court not to suppress
Appellant=s oral
statement to Officer Jacquez.  While we
believe this error is of constitutional dimension because it affected Appellant=s Fifth Amendment rights, we
nevertheless conclude that this error was harmless.  An appellate court must reverse a judgment of
conviction or punishment unless the court determines beyond a reasonable doubt
that error did not contribute to the conviction or punishment.  See Tex.R.App.P.
44.2(a).  Under this harm analysis, we
calculate as much as possible the probable impact of the error on the jury in
light of the existence of other evidence. 
Wesbrook v. State, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000); Harris
v. State, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989).  While the most significant concern must be
the error and its effects, the presence of overwhelming evidence supporting the
finding in question can be a factor in the evaluation of harmless error.  Wesbrook, 29 S.W.3d at 119; see
also Harris, 790 S.W.2d at 587-88 (outlining factors to consider).  

In establishing it=s case-in-chief, the State did not rely
upon nor did it place any emphasis on Appellant=s
oral statement to Officer Jacquez. 
Rather, the State argued that Appellant had committed the charged
offense based on the following evidence: 
the quantity of the cocaine found on Appellant=s
person and inside the SUV; Appellant=s
written statement in which he admitted ownership of the cocaine; evidence
related to the location and accessibility of the cocaine to Appellant; the
amount of money found in the center console of the SUV, in particular the
denomination of the bills; and witness testimony to show an intent to deliver
rather than possession of the cocaine for personal use.  Therefore, even though the trial court erred
in not suppressing Appellant=s
oral statement, we conclude beyond a reasonable doubt that the error did not
contribute to Appellant=s
conviction or punishment.








Accordingly, we
find that it was not an abuse of discretion for the trial court to refuse to
suppress the complained-of evidence. 
Appellant=s sole
issue for review is overruled. 

We affirm the
trial court=s
judgment.

 

 

June
22, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
At trial, Officer Jacquez testified that before conducting the search incident
to the arrest, for safety purposes, he asked Appellant if he had any type of
weapons, needles, or narcotics on his person. 
In response, Appellant told him that he had some cocaine in his
underwear and showed it to the officer. 
According to Officer Jacquez, when he asked Appellant the question, he
did not have Appellant at gun point, did not have him in handcuffs, and did not
threaten him in any way.  Officer Jacquez
denied that he interrogated Appellant in order to obtain an incriminating
response.  Officer Jacquez explained that
every time he arrests someone, for his safety, he searches the person before
that person is handcuffed and placed in the patrol unit because that person
could have a weapon or a needle that could poke him.  





[2]
Miranda v. Arizona, 384 U.S. 436, 86
S.Ct. 1602, 16 L.Ed.2d 694 (1966).  





[3]
Appellant does not challenge the legality of
the arrest.  Upon lawful arrest, the
arresting officer may conduct a search incident to that arrest.  See United
 States v. Robinson, 414 U.S.
218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973); Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040,
23 L.Ed.2d 685 (1969).